GLENESKY, Respondent, vs. KIMBERLY & CLARK COMPANY, Appellant.

*May 13—June 3, 1909.*

*Master and servant: Duties of master: Safe place to work: Negligence: Personal injuries: Unguarded machinery: Duty to instruct servant*

1. The rule requiring the master to furnish his servant with a reasonably safe working place calls only for a working place free from all dangers which a person in the circumstances of the master, in the exercise of ordinary care, ought to know of, and which, under the circumstances, the servant, in the exercise of ordinary care, is not legally chargeable with knowledge of.
2. A master is not required to instruct a servant as to the existence of danger, unless it is reasonably to be apprehended that the circumstances requisite to set that danger in motion may probably occur.
3. Failure of the master to instruct a servant as to matters which the servant must have known in consequence of his employment does not constitute actionable negligence.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This is an action brought to recover damages for personal injury. The plaintiff when injured was employed in removing pulp from the wooden roll forming a part of one of the wet machines used in the defendant's pulp mill at Niagara. Such wet machine consists in part of two rolls, one being made of iron and the other of wood. The iron roll is set in a frame and is about fifteen inches in diameter. The bottom of the roll is about twenty inches above the floor of the machine room and parallel therewith. The wooden roll rests directly on the iron roll and is twenty-one and one-fourth inches in diameter. When the machine is in operation the bottom or iron roll revolves toward the operator, carrying an endless felt, which passes through a vat or receptacle containing water and ground wood pulp. A certain amount of pulp is re-

moved from the vat by adhering to the felt. As the felt containing the pulp comes in contact with the wooden roll the pulp is transferred from the felt to such roll. The wooden roll is turned by means of contact with the felt revolving on the lower roll. By reason of the weight of the wooden roll a portion of the water is squeezed out of the pulp as it becomes attached thereto, but the pulp is sixty per cent. water after being wound on the roll and has very little adhesive power or cohesive strength. The wooden roll, being revolved by the iron roll, turns in the opposite direction, or away from the operator of the machine, and moves slowly, making fifteen or twenty revolutions a minute. After about forty revolutions a layer of pulp is formed around the wooden roll of convenient thickness, which is removed by inserting a sharp pointed wooden stick in a groove near one end of the roll and pushing it along the roll horizontally until the cylindrical sheet of pulp is severed. A part of the time the severed end will drop down of its own weight on a table in front of the machine, and a portion of the time it is necessary to take hold of it with the fingers in order to remove it. Whether it will fall of its own weight, or some degree of force must be used to remove it, depends to some extent upon the position of the rent with reference to the top of the roll. If near the top, the sheet is not apt to drop of its own weight, although a slight amount of force will suffice to loosen it from the roll. The roll itself is about eighty-four inches in length, and the width of a sheet of pulp formed thereon is about sixty-three inches. The operator stands near to the right end of the roll and about twelve or fourteen inches therefrom, and there is no table between him and the roll, but there is one immediately to his left. The plaintiff had been working for about four months, on and off, at removing pulp from the roll of one of the wet machines of the defendant company. His work of this character would be about the equivalent of two months' steady work. He was twenty years of age and uneducated. In

doing his work he stood upon a platform three feet square and nine inches from the floor. From the top of this platform to the top of the wooden roll was forty-seven inches. The plaintiff was injured by reason of his hand coming in contact with and being drawn in between the two rolls heretofore described. The plaintiff's hand necessarily passed over the top of the wooden roll and followed it around to the point of contact between the two rolls, such point of contact being on the side of the rolls opposite from where the plaintiff worked. The distance from the top of the wooden roll to the point of contact, measured along the surface of the roll, was about thirty-three inches. It seems to be conceded that the plaintiff, while standing upon the platform, could not reach around the roll so as to bring his fingers in contact with the lower roll, and that such contact could only occur when the body was raised from the platform.

The plaintiff testified that when he tore the pulp with his stick he took the stick in his left hand and took hold of the pulp with his right hand, and that the pulp did not come off, and that it caught his hand and drew it into the rollers on the opposite side from where he stood. He further testified that the pulp stuck to the roll. The witness was not conversant with the English language, and it is fair to assume that he intended to say that the friction produced by his hand coming in contact with the pulp drew his hand between the rolls. Manifestly the pulp did not and could not otherwise draw his hand, because there was nothing to prevent his letting go of the sheet of pulp if he was unable to detach it from the roll, and at best it is not claimed that such removal would require any considerable force or effort. A witness sworn for defendant saw the accident, and testified that plaintiff had placed some sheets of pulp upon the platform on which he was standing; that after making the rent in the sheet he grabbed for it to detach it and missed it, and then made another grab and

slipped and fell on the roll, and was carried over by it so that his hand got between the rolls.

The foregoing states in substance all the material testimony as to how the accident happened.    It appeared from the testimony that operators occasionally dropped the sticks used in skinning the rolls and that such sticks were carried over and injured the felts.   To prevent occurrences of this kind a board was placed in a position parallel with the upper roll, a space being left between the edge of the board and the roll of sufficient width so that the board would not interfere with the formation of a layer of pulp on the roll, but not wide enough to admit of the skinning stick passing between the roll and the board.    This board was placed along the side of the roll opposite from where the operator worked, and a short distance beyond the apex of the roll.    The evidence was undisputed that this board or guard was not put in place for the purpose of affording any protection to operators, and because of its proximity to the operator it is manifest that, if the fingers of the operator rested on the roll and followed it any considerable distance beyond the top, they were liable to be pinched between the roll and the board.    It is likewise apparent that if this board had been in place it would have prevented the particular accident that befell the plaintiff.    For some reason the board or guard in question had been removed about two days before the plaintiff was injured and had not been replaced.    The jury found that the defendant was negligent in not maintaining a guard so as to prevent the plaintiff's hand being crushed between the rolls and also in failing to warn the plaintiff of the danger incident to his employment.    The defendant moved for a nonsuit, and for a directed verdict, and to change the answers returned by the jury to certain questions in the special verdict and for judgment on the verdict as amended.    These various motions were denied, and from a judgment rendered on the verdict defendant appeals to this court.

For the appellant there were briefs by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

BARNES, J.   A full statement of the undisputed facts in this case has been made, and the conclusion reached by the court obviates any discussion of the evidence.   If the master was negligent in furnishing an unsafe machine it was because of failure to so guard it as to prevent the happening of the accident that occurred.   No other defect in the appliance furnished is complained of.   Notwithstanding the finding of the jury, we think the undisputed testimony shows that the machine was a reasonably safe one, and that the defendant was not negligent in failing to guard it in such a manner as to prevent the accident.   The roll moved slowly, making but fifteen or twenty revolutions a minute.   It revolved away from the operator.   It was forty-seven inches from the top of the platform on which he stood to the top of the roll, and when at work he usually stood twelve or fourteen inches from the roll.   The machine itself was fifty-six inches in height. The point of contact between the rolls was about thirty-five inches from the floor.   There was not only this barrier fifty-six inches high in front of the operator, but, in order to get caught, his hand must necessarily have followed the roll around to the opposite side from where he was working, further than he could reach.   Counsel on both sides concede that the plaintiff could not have reached around the upper roll to the point of contact with the lower one while standing on the platform.   It required little force to remove the pulp from the roll, and the space above it was open and unobstructed. It is apparent that the accident could only have happened by the operator's body coming in contact with the roll, or by his holding onto the same with his hand so that he was lifted off his feet.   If he fell against the roll, no explanation is offered

as to why he did not push himself off instead of clinging to it. It seems to us that a master must well-nigh have the gift of prescience to apprehend that there was any likelihood of an accident happening to an operator by being caught between these rolls, and that it would be holding him to an unusual and extraordinary degree of care to say that he was negligent in not having the foresight to conceive that such an accident might happen.

"The rule requiring the master to furnish his servant with a reasonably safe working place calls only for a working place free from all dangers which a person in the circumstances of the master, in the exercise of ordinary care, ought to know of, and which, under the circumstances, the servant, in the exercise of ordinary care, is not legally chargeable with knowledge of." *Hencke v. Ellis,* 110 Wis. 532, 539, 86 N. W. 171; *Mueller v. N. W. I. Co.* 125 Wis. 326, 330, 104 N. W. 67; *Atkinson v. Goodrich T. Co.* 60 Wis. 141, 18 N. W. 764; *McGowan v. C. & N. W. R. Co.* 91 Wis. 147, 64 N. W. 891.

Under any reasonable application of the foregoing rule the defendant was not negligent in failing to maintain a guard on the machinery in question, and it is evident that the work of the plaintiff would be attended with apparently greater danger when the guard was on than when it was off.

It is equally clear that the defendant was not guilty of negligence in failing to warn the plaintiff of the hazard that produced the injury.

"Granted that the danger existed, yet it does not follow there was a duty to instruct in regard to it, unless it was reasonably to be apprehended that the circumstances requisite to set that danger in motion might probably occur. . . ." *Dahlke v. Ill. S. Co.* 100 Wis. 431, 434, 76 N. W. 363; *Fleming v. Northern T. P. Mill,* 135 Wis. 157, 114 N. W. 841.

It seems clear to us that the accident was such that the defendant had no reasonable ground to apprehend that it might occur. Besides, the plaintiff operated this machine for a pe-

riod of two months, and in the exercise of ordinary care he should have known that if he fell against the roll and held it sufficiently tight to lift his body from the ground it would carry him over.   He must also have known that if his fingers came in contact with the rolls they would be bruised.   These were the only facts in reference to which the master could have instructed him.

The trial court should have directed a verdict in the defendant's favor.  Failing to do so, the   defendant's motion to change the answers returned by the jury to the second, third, fourth, and fifth questions in the special verdict should have been granted, and judgment entered in defendant's favor on the verdict as corrected.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment in favor of the defendant dismissing the plaintiff's complaint.

KERWIN, J., took no part.