NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Respondent, vs. THE STATE, Appellant.

*November 19—December 14, 1920.*

*Insurance: Mutual life insurance companies: Loans to policy-holders: Interest as taxable income: Taxation: Pleading: Allegations admitted by demurrer.*

1. A complaint in an action by a mutual life insurance company which alleged that it had paid under protest income taxes on interest accrued on loans made to its policy-holders, not paid in cash but added annually to the principal until the loan and interest equals the cash surrender value of the policy, at which time the loan and the policy are canceled, and sought recovery of the sums so paid under protest, not because an annual settlement was not made with the borrowers but because the loans did not result in a profit to the company, does not state a cause of action.

2. A demurrer to the complaint which alleged that no gain or income resulted to the company from the loans in question did not admit such allegation. A demurrer admits all facts well pleaded, but does not admit erroneous conclusions drawn from such facts by the pleader, though bearing the semblance of statements of fact.

3. The fact that a mutual life insurance company has paid all taxes due on the funds it uses to pay policies cannot affect its duty to pay taxes on income derived from loans made by it on the security of such policies.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Action to recover the sum of $21,643.07, being the amount of license fees paid under protest by plaintiff on $721,435.77 due in 1919 from its policy-holders but not paid to it in cash otherwise than by annually adding the amount due for interest to the principal of the policy loan. The allegations of the complaint are summarized by counsel for plaintiff as follows:

"Plaintiff's only sources of revenue always have been and now are (a) premiums paid in cash by member policy-holders, and (b) interest or other income derived from the investment of portions of premium payments. All of plaintiff's funds have, therefore, been accumulated directly or indirectly from premiums. Plaintiff has paid all taxes levied by the state of Wisconsin upon income received by it in money since its organization. In order to meet its policy obligations it has been necessary for plaintiff, and it has been required by law, to set aside and accumulate reserve funds, the minimum amount of which for many years has been fixed by the laws of this and other states in which plaintiff does business. These reserve funds plaintiff has kept invested in income-producing securities authorized by the laws of this state. Holders of policies issued by plaintiff have the right to surrender them and receive the surrender value thereof. During the first fifteen years of the life of a policy its surrender value is somewhat less than the reserve thereon, but thereafter the two are the same. Since 1863 plaintiff has been authorized to advance or loan portions of its funds to policy-holders upon the sole security of their policies, and since 1896 the policies have contained agreements to make such loans. Plaintiff has made numerous advances or loans to policy-holders under agreements which provide: 'In case of the nonpayment of any interest on said loan when due, such interest shall be added to and become a part of the principal of said loan and shall bear interest at the rate aforesaid. If and whenever on any day the amount of such principal together with the interest accruing upon the same shall equal the then cash surrender value of the said policy and dividend additions thereto, if any, the said policy and dividend additions

shall thereupon become void without action on the part of said company and be deemed surrendered in consideration of the cancellation of said loan.' Under said agreements plaintiff has no right to enforce payment of either principal or interest, its only right being to offset the aggregate amount of principal and interest against the reserves held by plaintiff to meet its obligations under the policies on the security of which such advances or loans were made. When an advance or loan is made by plaintiff to a policy-holder the surrender value or reserve is thereby reduced by the amount advanced or loaned, and when interest is not paid the surrender value or reserve is further reduced, and when principal and accrued interest equal surrender value or reserve, the latter is wholly exhausted and wiped out and, by the terms of the loan agreements, the policy is deemed surrendered and the loan canceled. Interest accrued and was unpaid in 1918 to the amount of $787,455.74 and in 1919 to the amount of $721,435.77. This accrued but unpaid interest was added to the principal, as provided in the agreements, forming an offset to the reserves, and in some cases wholly exhausting the reserves and working a surrender of the policies and cancellation of the loans. Plaintiff's assets were not thereby increased in any degree. All reserves held by plaintiff against which accrued and unpaid interest was charged or offset had been accumulated and built up out of income received by plaintiff prior to the year in which such charge or offset occurred, upon which income plaintiff had paid all taxes assessed under the law in force when the same was received by plaintiff."

The defendant demurred to the complaint, and the circuit court overruled the demurrer on the ground that, though there was an annual gain to the company, it was not *paid* anything until the policy was canceled by the loan and accrued interest equaling the cash value of the policy, or by death when the loan with accrued interest is deducted from the death benefit, or by a cash payment of the interest or interest and loan by the policy-holder. From an order entered accordingly the defendant appealed.

For the appellant there was a brief by the *Attorney General* and *E. E. Brossard,* assistant attorney general, and

oral argument by *J. E. Messerschmidt,* assistant attorney general.

For the respondent there was a brief by *Geo. Lines* and *Sam T. Swansen,* both of Milwaukee, and oral argument by *Mr. Lines.*

VINJE, J. The gist of the argument of counsel for plaintiff is that since, when interest on a policy loan is unpaid, nothing comes in to the company by way of money or its equivalent, there is neither gain nor loss by the transaction. That when the policy loan with accrued interest equals the reserve they cancel each other, leaving net assets as before. This argument is repeated in varying forms. **Thus:**

"By the terms of the policy and the loan agreement, whenever the loan with unpaid interest thereon equals the then reserve, both policy and loan are canceled. When that happens the reserve disappears from liabilities and the loan and interest disappear from assets, leaving net assets or unappropriated surplus unaffected." . . . "It is admitted that all the reserves against which the unpaid interest was charged had been accumulated and built up out of money received by the plaintiff in years prior to those in which the unpaid interest accrued and was so charged, and upon which money plaintiff had paid all taxes imposed by law. It is clear, therefore, not only that nothing came in on account of this unpaid interest, there was no gain or increase in plaintiff's total assets. but also that any increase in net assets would result wholly from the transfer on the books from reserve to unapportioned surplus of funds which had already paid all taxes lawfully imposed thereon." . . . "When a policy-holder obtains a loan the company's cash is thereby depleted and, as before stated, the loan becomes an asset secured by the reserve upon the policy, the same as a farmer's note secured by mortgage. Therefore the insured, and not the company, has the use of the money loaned to him, and any income or benefit arising therefrom." . . . "The borrowing policy-holder renders no service whatever to the company; neither does he pay the company anything in money or that which can be converted into money. He

has the sole use of the money which he has obtained from the company. . . . If he dies the company must pay the face of the policy, less only the amount of the loan and interest. For this protection the company receives nothing by way of return upon the money loaned." . . . "When the policy and policy loan are canceled because policy loan and interest have overtaken and equal reserve there is no payment, satisfaction, or release of unconditional debts, . . . but merely the release of one party to a conditional executory contract by the failure of the other party to perform. No service has been rendered by either to the other. No debt has been paid or discharged. Nothing either in money or that which is convertible into money has passed from one to the other. Neither has gained anything. There has been no addition or increment to the estate of either. While the company's book liabilities have been reduced so have the book assets in like amount. The change is altogether in bookkeeping assets; not at all in real assets."

Such is the argument rung in varying changes, and finally an example of a loan is given to clinch it. A policy loan of $9,393 is made upon a policy whose reserve is $9,992.80. At the end of three years and nine months the policy loan with accrued interest amounts to $11,690.63 and the reserve to $11,690.52, and the two cancel each other. Counsel assume the company receives nothing for its loan and then they show that if the company loaned out the same amount to one who paid interest annually it would receive at the end of three years and nine months in cash interest— less three per cent. tax,—the sum of $2,223.16. But they forget to point out that since the company is able to cancel an $11,690.63 indebtedness by a loan of $9,393 through the earnings of the loan such earnings must amount to $2,297.63, which less a three per cent. annual tax, equaling $74.47, leaves the company $2,223.16 for the use of its money the same as on the cash interest paid loan. The original loan of $9,393 has in three years and nine months grown to $11,690.63, and yet they claim there is no gain from the transaction. This and similar arguments above set

forth certainly challenge our attention and make us question our ability to understand correctly.

Just why honest, intelligent, and capable officers of a company should loan millions to its policy-holders without gain when they can loan them to others at a profit, is not so clear. Neither is it clear how such a business in a mutual company can be tolerated by non-borrowing policy-holders. What right does the company have to loan out its funds without profit when they can be made to earn six per cent. by loaning them to non-policy-holders? The question need not be answered, because there is a gain or income to the company from the loans in question. An analysis of the arguments of counsel shows that the fallacy of all their reasoning lies in the fact that they ignore the earned increment of the loan—the added interest charge—that enables the company in time to offset the loan against the cash value of the policy. When the loan is made it is smaller than the then cash value of the policy and cannot offset it. When by reason of the earned interest it equals the cash value of the policy the latter is automatically canceled. Should death occur before the loan plus the added interest equals the cash value of the policy, the loan and interest is deducted from the sum due on the policy. So in any event the company collects the interest. It does so annually. It also does it whenever the loan plus interest equals the cash value of the policy and whenever death occurs during the life of the policy. Since it has collected in advance from the policy-holder the principal of the loan and all the interest the loan can earn before it cancels the policy, it receives the interest every time it adds it to the principal, for by so doing it increases thereby *pro tanto* the company's assets held as an offset to the borrower's assets in the company. It pays itself out of his funds in its hands. The result would be just the same if it took so much cash out of the reserve held for the borrower and paid it to itself without adding it to the principal. The loan earns interest, and the company, by adding

it to its assets as an offset against the assets of the borrower, pays itself.

If the loan were made to B., a non-policy-holder, and the interest collected annually in cash and the loan were called in when the principal together with the interest equaled the then cash value of A.'s policy, the company would be exactly in the same condition as if it loaned the same amount to A. on his policy and his interest accumulated till with the principal it equaled the reserve value of his policy and canceled it. Confessedly the company would receive a gain or income from its loan to B., and confessedly it receives the same gain or income from a like loan to A. When the unpaid interest is deducted from the amount due from the company to the policy-holder he pays it and the company receives it. And it receives it in cash, for it has already in its hands the cash out of which to pay itself.

If the making of the loan be regarded as the opening of an account current in which the policy value is the borrower's item of account drawing interest at the rate at which the company earns for its policy-holders, which is less than six per cent., and the company's item is the loan drawing interest at six per cent., then when its item has earned enough to equal the borrower's item the two cancel each other, each receiving his respective gain from the investment. But perhaps the simplest way to state the proposition is that interest at six per cent. collected from a loan annually results in an annual gain or income to the lender.

It is argued that since the complaint alleges that no gain or income results from the loans in question the demurrer admits the fact. A demurrer to a complaint admits all the facts therein well pleaded, but it does not admit erroneous conclusions drawn from such facts by the pleader even though the conclusions bear the semblance of statements of fact.

If it be said that unpaid interest is charged to the borrower's reserve account but not credited to the account of

the company, the answer is that it should be so credited, and that it remains a credit to the company whether booked as such or not and inures to its benefit when settlement is made.

The fact that the company has paid all taxes due on the funds it uses to pay policies cannot affect its duty to pay taxes upon income derived from loans made by it.

Counsel for plaintiff stated upon the oral argument that if it was held there was an annual gain to the company resulting from the loans in question, then the company should be held to pay a tax on such gain annually even though no settlement had been made with the policy-holder. It follows that the facts stated in the complaint do not constitute a cause of action because the tax in question was lawfully collected and plaintiff is not entitled to repayment thereof.

*By the Court.*—Order reversed, and cause remanded with directions to sustain the demurrer and to dismiss the complaint upon the merits.