ST. MARY'S CONGREGATION and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*December 4—December 30, 1953.*

528

For the appellants there was a brief by *Klaprat, Larson & Rogge* of Wausau, attorneys, and *Toebaas, Hart, Kraege & Jackman* of Madison of counsel, and oral argument by *E. E. Klaprat* and *W. L. Jackman.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

FRITZ, C. J.  The issue on this appeal is whether Zacharias at the time of his injury was an employee of the Congregation or an independent contractor.

This court has repeatedly held that the principal test for determining whether the relationship of employer and employee exists is whether the alleged employer has the right to control the details of the work. *Phaneuf v. Industrial Comm.* (1953), 263 Wis. 376, 378, 57 N. W. (2d) 406; *Thurn v. La Crosse Liquor Co.* (1951), 258 Wis. 448, 46 N. W. (2d) 212; *Hume v. Industrial Comm.* (1945), 248 Wis. 5, 20 N. W. (2d) 573; and *Fritz v. Industrial Comm.* (1935), 218 Wis. 176, 260 N. W. 459.

Reverend Esdepsky, pastor of the Congregation, who engaged Zacharias to do the odd repair jobs in and about the Congregation's buildings, was asked this question and gave this answer:

"*Q.* Did you feel, Reverend Esdepsky, that you had the right to control the way in which Mr. Zacharias did the work? *A.* Yes."

However, Zacharias, a carpenter and cabinetmaker, was a skilled craftsman and at least some of the repair work which he did for the Congregation was such as required a skilled craftsman so to do, such as replacing flooring in the bathroom floor of the rectory and repairing broken desk drawers. Reverend Esdepsky, on the other hand, admitted that he was not a carpenter and therefore did not possess the skilled knowledge necessary to direct Zacharias in the doing of the details of his work. The testimony did disclose that on one occasion Reverend Esdepsky pulled Zacharias from one job he was doing before it was finished and put him on another, and also directed him as to what times he should do work in the church so as not to interfere with special church functions and services. However, any householder engaging the services of a plumber or other skilled craftsman would have the same right to specify the time such craftsman was to come to do the work, or to inform him of the time when certain rooms would be available or not available in which the work was to be done, without thereby affecting the status of such craftsman as an independent contractor.

In the case of *Plencner v. Industrial Comm.* (1946), 249 Wis. 370, 24 N. W. (2d) 669, the city of Wautoma engaged the services of the plaintiff Plencner, who was a skilled plumber, to remove roots from a sewer, and while so engaged Plencner was injured and thereafter sought to hold the city liable for workmen's compensation benefits. In its decision the court stated (p. 373) :

"Plencner was the skilled workman who knew how to do the work, and when a skilled workman such as a plumber, carpenter, or electrician is engaged, whether it be a new or repair job, he is generally considered an independent contractor unless the intent of the parties to the contract be otherwise."

Both Plencner and Moon, the city street commissioner who engaged the services of Plencner, testified that Moon

controlled the details of the work done by Plencner. In commenting on the effect of this testimony this court stated (p. 375):

"If these general statements were to stand alone they would probably be sufficient to warrant a recovery, but all the testimony must be taken into consideration in determining whether this is a fact or merely a conclusion stated by a witness."

The court then went on to point out that, while Moon had general supervision to see that the sewer was open (p. 373), "at best he had only general knowledge of what was necessary to be done in order to accomplish this end;" so that the testimony given that Moon did control the details of the work done by Plencner was but a conclusion and not a statement of fact.

Applying the principles laid down by this court in the *Plencner Case* to the facts in the instant case, we are of the opinion that the statement made by Reverend Esdepsky to the effect that he had the right to control the details of the doing of the work by Zacharias, when considered in the light of other evidence in the record, was but a conclusion of law of the witness, and not a statement of fact. Standing alone such testimony by Reverend Esdepsky, that he had the right to control the details of the work, might support the finding of the commission that Zacharias was the employee of the Congregation when injured, but the effect of such testimony is completely explained away by other facts brought out in the evidence. Such statement by Reverend Esdepsky therefore did not constitute "credible evidence, which, if unexplained, would support the finding of the commission." *Fruit Boat Market v. Industrial Comm.* (1953), 264 Wis. 304, 307, 58 N. W. (2d) 689; *Motor Transport Co. v. Public Service Comm.* (1953), 263 Wis. 31, 46, 56

N. W. (2d) 548; *Hills Dry Goods Co. v. Industrial Comm.* (1935), 217 Wis. 76, 85, 258 N. W. 336.

The attorney general contends that, because of the testimony of Reverend Esdepsky that he had the right to terminate the services of Zacharias at any time, such fact would in itself constitute evidence to support the commission's finding that the relationship of Zacharias to the Congregation was that of employee rather than independent contractor. In support of such contention our decision in *Green Valley Co-op. Dairy Co. v. Industrial Comm.* (1947), 250 Wis. 502, 509, 27 N. W. (2d) 454, is cited, wherein it was stated that where an employer has the right of summary discharge "he obviously has the right to control details of the work." However, the alleged employee in the *Green Valley Co-op. Dairy Co. Case* was a cheesemaker working in the plant of the dairy, and the dairy contended that he was an independent contractor because he was paid on the basis of hundredweight of cheese manufactured by him. In such a fact situation the right of summary discharge by the alleged employer is a strong circumstance tending to establish a right to control details of the doing of the work. On the other hand, if the right to terminate the services of skilled craftsmen, such as plumbers, electricians, and carpenters, who are called in from the outside to render skilled services of their craft, is to be the test of whether an employee or independent-contractor relationship exists, no finding by the commission that such a skilled craftsman was an employee and not an independent contractor could ever be subject to court review even if all the facts of the case, as here, were undisputed. A skilled craftsman engaged on a time-and-material basis, and not under a contract for the entire job, is always subject to having his services terminated at any time by the person engaging him. We do not consider such right of termination as applied to the services of skilled craftsmen, who are en-

gaged in an independent calling of their own, would alone be sufficient to support a finding of an employee-employer relationship. This is especially true in light of our statement in the *Plencner Case, supra,* that such skilled craftsmen are usually considered to be independent contractors.

The attorney general also maintains that sec. 102.07(8), Stats., 1947, is controlling in the instant case on the question of the relationship of Zacharias to the Congregation being that of employee. Such statute provides as follows:

"Every independent contractor who does not maintain a separate business and who does not hold himself out to and render service to the public, provided he is not himself an employer subject to this chapter or has not complied with the conditions of subsection (2) of section 102.28, shall for the purpose of this chapter be an employee of any employer under this chapter for whom he is performing service in the course of the trade, business, profession, or occupation of such employer at the time of the injury."

It is evident that the examiner of the commission had this statute in mind when he found that Zacharias never held himself out to the public as a general repairman. Apparently it was the theory of the examiner that the repair services rendered by Zacharias to the Congregation were something apart from his calling as a builder of homes, and it was in the latter capacity alone that he held himself out to the general public. However, Zacharias had been known and recognized in the community for many years as a skilled carpenter and cabinetmaker. Even after World War II, when he devoted his chief efforts to building homes, he still occasionally did odd jobs of carpentry work. We do not believe that his activities in doing repair work for the Congregation can be segregated from his home-building activities or general carpentry business. It is our conclusion that as a matter of law Zacharias was maintaining a separate business in which he held himself out to render service to the public and, therefore,

sec. 102.07(8), Stats., has no application to the determination of the issue before us on this appeal.

In summary, we have a situation here where Zacharias was a skilled craftsman employed to do repair work which required the exercise of the skill of his craft; the pastor of the Congregation who engaged him did not possess the necessary skill or knowledge of carpentry which would enable him to control the details of the work done by Zacharias, the pastor being only concerned with the end result of each task performed by Zacharias; and Schuler was employed by Zacharias to assist him and was paid $1.75 per hour by Zacharias, who, in turn, billed the Congregation for Schuler's services at $2 per hour. These undisputed facts clearly establish that the relationship of Zacharias to the Congregation was that of independent contractor and not an employee, and completely explain away any other facts in the record which, standing alone and unexplained, might tend to support the commission's findings. Therefore, the finding of the commission of an employee-employer relationship cannot stand and the order based upon the same must be reversed.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment setting aside the order of the Industrial Commission.