SZEP and others, by Guardian *ad litem*, Appellants, v. ROBINSON and wife, Respondents.

*May 2—June 4, 1963.*

For the appellants there was a brief and oral argument by *Henry L. Arnold* of Milwaukee.

For the respondents there was a brief by *Kivett & Kasdorf*, attorneys, and *Nonald J. Lewis* and *John R. Henderson* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis.*

Wilkie, J. There are two issues raised on this appeal:

1. *Was there an employer-employee relationship existing between the defendants and Susan Szep?*

2. *If so, did the complaint state facts sufficient to state a cause of action?*

The first point on which the defendants quarrel with the plaintiffs' complaint concerns the use of the word "hired," presumably to establish that the legal relationship of Susan to the defendants was that of an employee rather than that of an independent contractor.

By demurring to the complaint the defendants have not admitted that an employer-employee relationship existed between the defendants and Susan.[1] The complaint assumes a master-servant relationship in terms of which the master's alleged duties and negligence toward Susan are asserted. But the question on demurrer is not to settle as a matter of law that an employer-employee relationship existed, but to determine whether as a matter of law it could be ruled under the facts alleged that there was no such relationship.

We are convinced that the facts alleged establish an employer-employee relationship, and that as far as this point is concerned there is no basis for sustaining the demurrer.

In *St. Mary's Congregation v. Industrial Comm.* (1953), 265 Wis. 525, 529, 62 N. W. (2d) 19, it was stated:

---

[1] See *Miller v. Welworth Theatres* (1956), 272 Wis. 355, 75 N. W. (2d) 286, where it was stated, at page 359: "A demurrer, of course, admits all facts well pleaded in the complaint to which it is interposed, but it does not admit mere propositions of law which may be set forth therein. *State ex rel. Veeder v. Collins,* 5 Wis. 339. The rule is stated in *Northwestern Mut. Life Ins. Co. v. State,* 173 Wis. 119, 125, 180 N. W. 138, as follows: 'A demurrer to a complaint admits all the facts therein well pleaded, but it does not admit erroneous conclusions drawn from such facts by the pleader even though the conclusions bear the semblance of statements of fact.' See also *Olsen v. Ortell,* 264 Wis. 468, 59 N. W. (2d) 473."

"This court has repeatedly held that the principal test for determining whether the relationship of employer and employee exists is whether the alleged employer has the right to control the details of the work." [2]

Although the baby-sitter, by definition, is left alone, no one can dispute the fact that the parents have the "right to control" the details of their baby-sitter's work and that this gives the parents the degree of control necessary to establish an employer-employee relationship.

We conclude that Susan was an employee of the defendants. But assuming that the relationship of employer and employee existed here as between Susan and the defendants, did the complaint state facts sufficient to state a cause of action?

The duty that an employer owes an employee is best summarized by Prosser, Law of Torts (2d ed.), p. 373, sec. 67:

"67. At common law the duty of an employer to protect his servants was limited to certain more or less specific obligations, beyond which the servant was expected to assume all the risks of his employment. The master was required only to use reasonable care to:
"a. Provide a safe place to work.
"b. Provide safe appliances and equipment.
"c. Warn and instruct the servant as to dangers of which he might be expected to remain in ignorance.
"d. Provide a sufficient number of suitable and competent fellow servants.
"e. Make reasonable rules for the conduct of the work."

Prosser, *supra,* also states at pages 375 and 376 of sec. 67:

"*Safe Appliances* The master was under a very similar obligation to provide safe appliances, tools and equipment for the work. He would be liable for any defects of which

[2] To the same effect are *Scholz v. Industrial Comm.* (1954), 267 Wis. 31, 64 N. W. (2d) 204; and *Employers Mut. Liability Ins. Co. v. Industrial Comm.* (1939), 230 Wis. 670, 284 N. W. 548.

he knew, or which he might have discovered by reasonable inspection, and the care he was required to exercise must be proportionate to the danger. Once provided, he must make reasonable inspections to see that the appliances continued safe. But he was liable only for lack of proper care, *and he was under no obligation to provide the best and* safest or newest equipment, so long as that which he furnished might with reasonable care be used in safety. . . . [Emphasis added.]

"*Warning and Instruction* A further obligation was to warn the servant of any dangers connected with the work of which the master knew, or which he might discover with proper care, and of which the servant might reasonably be expected to remain in ignorance. This was particularly true in the case of young or inexperienced employees, who must be given instructions suitable to their age, intelligence and knowledge, and to the risk to be encountered. *But the employer was 'only required to do what a prudent master would do under like circumstances.' No warning need be given of a danger which should be obvious to the servant,* such as that of revolving rollers, of stepping out of a cinder pit when trains are passing, or of standing on a bench likely to tip." (Emphasis added.)

Baby-sitting is a recognized institution in almost every American home. Girls, and even boys, who reach the age where a source of pocket money (other than their parents) is desired, hire themselves out to "sit" with the neighbors' children. Although this presents a marvelous opportunity for watching TV, listening to the radio, and hanging on the phone with a friend, there is usually a variety of work to be done, including dishwashing, carpet sweeping, gardening, and just plain sitting and playing with the tiny tots. It is common knowledge that one of the assigned chores in many cases is to prepare a meal and feed the hungry children.

Over the years no doubt baby-sitters have received injuries while baby-sitting, and as is pointed out in Anno. 49 A. L. R. (2d) 359:

"Attempts by baby sitters to hold employers liable for injuries allegedly caused by the condition of the property have met with little success."

This annotation cites cases holding an employer of a baby-sitter liable for any injuries sustained by the baby-sitter in the performance of her services, *when it is reasonable to foresee that harm will result.* In most cases the baby-sitter was not able to recover because the injury was too remote for the employer to anticipate.

As we have reaffirmed in *Radloff v. National Food Stores, Inc.*, ante, p. 224, 121 N. W. (2d) 865, also decided today, harm must be reasonably foreseen as probable by a person of ordinary prudence under the circumstances, if conduct resulting in such harm is to constitute negligence.[3]

We hold that the complaint does not state a cause of action and that the demurrer was properly sustained.

There was no allegation that the electric stove was defective and that any defect led to the injury to Susan; neither was there any allegation that the terry-cloth towel was defective. The items of alleged negligence on the part of the defendants were:

a. Failing to provide a hot pad for Susan's use.

b. Failing to place the two pots on small burners, or to turn the large burners to a low position so that the outer exposed rings were not heated up.

c. Failing to properly and adequately instruct Susan in the use of the stove and warn her of the dangers in the use thereof.

d. Failing to lock the door leading to the basement.

Under each item of alleged negligence we conclude that the harm resulting to Susan could not have been reasonably foreseen as a probable consequence of the defendants' con-

[3] Also see *Wisconsin Power & Light Co. v. Columbia County* (1962), 18 Wis. (2d) 39, 43, 117 N. W. (2d) 597, and cases cited therein.

duct in each respect so as to constitute such conduct, if proved, negligence and a breach of the defendants' duty toward Susan.

Although the Robinsons did not furnish a pot holder, they did furnish another item which, although concededly not the best, was suitable to move a pot from the stove. Even though Susan was only sixteen, she did not need to be told that a terry-cloth towel should not be touched to a burner.

Neither was there any breach of duty to the plaintiff by the defendants in putting the two small pots on large burners thereby exposing the outer ring. Perhaps this was not the safest thing to do, but the pots with reasonable care could have been used in safety.

The allegation that Susan should have been instructed on the proper use of the stove and warned of the dangers in its use presupposes that by its very nature, use of the stove would expose employees to hidden dangers attending its operation. Such dangers as are involved in the use of the electric stove would all be apparent to even a sixteen-year-old girl and there could be no duty to instruct.

The allegation that the defendants were negligent in failing to lock the basement door is farfetched indeed. What plaintiffs are saying is that if Susan did not have to go down to the basement to retrieve the children, she would have been able to watch the stove and the pots would not have boiled over and therefore she would not have had to use the terry-cloth towel. This is too remote. To require a parent to run around the house and lock all the doors to places where the children might wander to avoid the related diversion from other duties of the baby-sitter while she corrals the children would be a very unreasonable prerequisite. In any event we see no reasonable connection between the unlocked basement door and the stove accident.

We find no Wisconsin cases on the subject of the right of a baby-sitter to recover for injuries caused by the alleged negligence of her employers. Although rules of law on the duty by an employer to his employee to furnish a safe place of employment and safe appliances are largely covered now by the Wisconsin Workmen's Compensation Act, or under the Federal Employers Liability Acts, common-law decisions of relatively early date in Wisconsin that still apply to common-law situations hold that an employer has a duty to furnish his servant with reasonably safe means and appliances for doing the work which he is required to do and a reasonably safe working place,[4] but in furnishing a reasonably safe working place the employer is required only to furnish a place that is "free from all dangers which a person in the circumstances of the master, in the exercise of ordinary care, ought to know of, and which, under the circumstances, the servant, in the exercise of ordinary care, is not legally chargeable with knowledge of." [5]

[4] In *Kaspari v. Marsh* (1889), 74 Wis. 562, 43 N. W. 368, at page 565, the court held an employer liable for not furnishing a safe scaffold to his employee, stating: "This court has frequently affirmed the doctrine that it is the duty of the master to furnish the servant with reasonably suitable and safe means and appliances for doing the work which the servant is required to do, as well as a reasonably safe working place; . . ."

In *Stock v. Kern* (1910), 142 Wis. 219, 125 N. W. 447, the jury found the defendant negligent in not providing a safe splitter machine and as a result the plaintiff was injured. The court, in reversing and awarding judgment in favor of the defendant, stated at page 222: "The fact that the machine might possibly have been equipped with guides and carriages and thereby have been rendered less dangerous affords no ground for complaint under the circumstances shown, for the reason that the defendant had the right to conduct his business and use this machine as he did, provided he thereby violated no positive law and did not expose his employees to hidden dangers."

[5] *Glenesky v. Kimberly & Clark Co.* (1909), 140 Wis. 52, 57, 121 N. W. 893.

The complaint specifies no legal duty owed by the defendants to Susan that has been breached and no claim of negligence as alleged against the defendants can be recognized. The demurrer was properly sustained and the complaint dismissed.

*By the Court.*—Judgment modified to dismiss the complaint as to all plaintiffs and, as so modified, affirmed.

FAIRCHILD, J. (*dissenting*). The complaint alleges and the demurrer admits that Mrs. Robinson did not have hot pads available for Susan's use; that she left the large burners of her electric stove turned on high heat; that the pots were not large enough to cover the burners; and that she failed to warn or instruct Susan concerning the use of the stove. The complaint characterizes her omissions as failures to exercise the ordinary care which employer-parents are required to exercise toward a baby-sitter who is directed to serve food left on the stove in the process of preparation. This court is ruling, in substance, that as a matter of law: (1) The presence somewhere in the kitchen of a terry-cloth towel of unknown size fulfilled the Robinsons' duty to supply a means of handling the hot utensils, and (2) that every sixteen-year-old girl willing to work as a baby-sitter is sufficiently familiar with an electric stove to need no warning or instruction concerning the hazard from the portions of the burners not covered by the pots.

I am unable to agree. With respect to proposition (1), just mentioned, I believe that a jury should be permitted, after hearing the evidence, to determine whether Mrs. Robinson fulfilled her duty to Susan as to the equipment provided. With respect to the duty of warning and instruction, Susan's maturity and experience, as they were known, or reasonably appeared, to Mrs. Robinson would be significant in deciding how much warning or instruction should reasonably be expected under the circumstances. It might, for

example, become evident at the trial that Susan had frequently been employed by the Robinsons to "sit" and prepare meals, and was thoroughly familiar with their home. At a different extreme, Susan may have had no experience, and Mrs. Robinson no reason to think she had. The facts would come out at trial, and furnish the jury with a sound basis for allocating the responsibility for Susan's injuries between her and her employers.

I would reverse the judgment and permit the service of an answer and a trial.