Maria A. MONSIVAIS, Plaintiff-Respondent,†

v.

Lester R. WINZENRIED, Ruby L. Winzenried, Margaret C. Winzenried, Michael W. Mittelstadt and Bonnie L. Mittelstadt-Berndt, Defendants-Appellants,

KAVANAGH & DEMOCHEETZ COMPANY, Threshermen's Mutual Insurance Company, Walter F. Furrer, Donald Furrer, ABC Insurance Company, DEF Insurance Company, GHI Insurance Company, JKL Insurance Company, MNO Insurance Company, PQR Insurance Company, STU Insurance Company, VWX Insurance Company, and XYZ Insurance Company, Defendants.

Court of Appeals

*No. 93–0157. Submitted on briefs June 11, 1993.—Decided October 27, 1993.*

(Also reported in 508 N.W.2d 620.)

†Petition to review filed.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Joseph J. Ferris* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Steven J. Vatndal* of *de la Mora & de la Mora* of Elm Grove and *Daniel P. Murray* of *Love, Voss & Murray* of Waukesha.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J. This is a wrongful death action brought by Maria A. Monsivais, the widow of Jose Monsivais. Maria based her action on Wisconsin's safe-place statute and common law negligence.

Jose Monsivais was found dead at the bottom of the basement steps at the K & D Tap in Waukesha. Maria sued both the operators of the tavern business and the owners of the tavern building, alleging numerous safe-place violations and negligent acts related to the building's structure. At trial, however, Maria's proofs primarily focused on the absence of: (1) an adequate warning sign on the basement door, (2) adequate lighting in the basement stairs area, and (3) an operable latch or lock on the basement door.

A principal issue at trial was whether Jose was a frequenter or a trespasser when he entered into the basement area of the tavern building. The jury found that he was a frequenter. The jury further found that the operators, the owners and Jose were all causally

negligent. The jury apportioned the negligence as follows: sixty percent to the operators, twenty-five percent to the owners and fifteen percent to Jose.

The owners appeal.[1] They contend that the basement of the tavern is not an area into which the tavern patrons are expressly or impliedly invited. Thus, they contend that Jose was a trespasser when he entered through the basement door and onto the basement stairs. Alternatively, the owners contend that the evidence was insufficient to support the jury's finding of negligence and causation and that the trial court made certain erroneous evidentiary rulings during the trial.

Under the facts of this case, we hold as a matter of law that Jose was a trespasser, not a frequenter. Since this holding is dispositive both as to Maria's safe-place claim and her common law negligence claim, we do not address the owners' other appellate issues. Accordingly, we reverse the judgment and order denying the owners' postverdict motions.

## FACTS

The relevant facts are not disputed. Donald Furrer owns Kavanagh & Democheetz Company which operates and owns the K & D Tap in Waukesha. At the time of Jose's death in 1988, Furrer leased the premises for operating the K & D Tap from the owners.[2]

The tavern's front door is located on the north end of the building. The bar is directly south of the front door and runs the length of the tavern. The restrooms are located on the tavern's south or rear wall. To the right of the front door, on the west side wall across from

---

[1] The owners are Lester Winzenried, Ruby Winzenried, Margaret Winzenried, Michael Mittelstadt and Bonnie Mittelstadt-Berndt.

[2] Furrer purchased the building from the owners in 1989.

the bar, is a cigarette machine, telephone, and the basement door.

The basement door opened inward to the left onto the upper landing of the stairs. The door had a doorknob but no locking or latching mechanism. The door opened by pushing inward; no turn of the doorknob was required. Above the door, attached to the wall, was a one and one-half inch by seven inch unlighted sign which stated, "Private." The sign was printed in white letters on a wood-colored background that matched the wall to which it was attached.

On December 3, 1988, Jose and a friend, Gabriel Rios, went to the K & D Tap after having already bought and consumed a six-pack and two twelve-packs of beer. While Jose was standing by the cigarette machine and about two to three feet north of the basement door, he twice asked Rios where the restrooms were located. Rios, who was seated at the bar on a stool across from the basement door, pointed towards the restrooms located at the rear of the tavern.

Shortly thereafter, another patron in the bar, Miguel Juarez, heard a loud noise and saw the basement door standing open. Juarez went to the basement door, turned on the light and saw Jose lying at the bottom of the basement stairs. Although no one actually saw Jose open the basement door or enter through it, the bartender testified that shortly before Jose was discovered a patron told him that someone had gone downstairs. Jose's autopsy revealed a blood alcohol concentration of 0.30%.

In answer to the first question on the special verdict, the jury found that Jose was a frequenter when he entered the basement area. In light of this answer, the jury went on to also find the operators of the tavern

762

business and the owners of the building negligent and Jose contributorily negligent.[3]

Postverdict, the owners asked the trial court to change the jury's answer that Jose was a frequenter. The owners relied upon *Grossenbach v. Devonshire Realty Co.*, 218 Wis. 633, 638, 261 N.W. 742, 744 (1935), and *McNally v. Goodenough*, 5 Wis. 2d 293, 300-01, 92 N.W.2d 890, 895 (1958), which hold that when a frequenter enters into an area to which he or she is not expressly or impliedly invited, the frequenter becomes a trespasser. Under such circumstances an owner owes only a duty to refrain from willful or intentional conduct against the trespasser. Wis J I—Civil 8025; *Nalepinski v. Durner*, 259 Wis. 583, 586, 49 N.W.2d 601, 602 (1951).

The trial court construed a later case, *Mustas v. Inland Construction, Inc.*, 19 Wis. 2d 194, 120 N.W.2d 95 (1963), to modify the prior case law. Under *Mustas*, the court concluded that the question was whether Jose was "on a reasonable search for a proper destination" when he entered the basement area. Reasoning that Jose was on a reasonable search for the restroom and "receiving a modicum of directions simply took a wrong turn," the court concluded that the evidence was sufficient to support the jury's finding that Jose was a frequenter when he entered through the basement door. The owners appeal.

---

[3] Prior to trial, Maria settled with the operators of the tavern pursuant to a *Pierringer* release. Thus, the operators did not actively participate in the trial. However, the question of the operators' negligence, as well as the owners', was submitted to the jury. *See Pierringer v. Hoger*, 21 Wis. 2d 182, 191-92, 124 N.W.2d 106, 111-12 (1963).

## ANALYSIS

### *Frequenter or Trespasser*

The duties of an owner to a frequenter are those prescribed by the safe-place statute and the principles of common law negligence. However, the only duty owed by an owner to a trespasser is to refrain from willful, wanton or reckless conduct. Wis J I—Civil 8025; *Nalepinski*, 259 Wis. at 586, 49 N.W.2d at 602. Here, Maria made no claim that the owners acted in a willful, wanton or reckless manner. Thus, if Maria was to recover on her safe-place or negligence claims, she had to first establish that Jose was a frequenter when he entered into the basement area. Accordingly, the first question of the special verdict inquired whether Jose was a frequenter at the time of his fall. If the jury answered this question "No," the jury was not required to answer any further questions.

As a general rule, a person's status as a trespasser or a frequenter is a question for the jury. *See* Wis J I—Civil 1901. If the question is properly for the jury, *Nolden v. Mutual Benefit Life Ins. Co.*, 80 Wis. 2d 353, 359, 259 N.W.2d 75, 78 (1977), we will search the record for credible evidence to sustain the jury's verdict and not for evidence to sustain a verdict which the jury could have reached but did not. *Radford v. J.J.B. Enters.*, 163 Wis. 2d 534, 543, 472 N.W.2d 790, 794 (Ct. App. 1991). However, the jury's verdict should be overturned if there is no credible evidence to support it. *Kolpin v. Pioneer Power & Light Co.*, 162 Wis. 2d 1, 25, 469 N.W.2d 595, 604 (1991). Based upon our review of the evidence and the law of trespasser/frequenter, we conclude that no credible evidence supports the jury's

finding that Jose was a frequenter at the time of the accident.

A "frequenter" under the safe-place statute is defined as "every person, other than an employe, who may go in or be in a place of employment or public building *under circumstances which render such person other than a trespasser*." Section 101.01(2)(d), Stats. (emphasis added).

A trespasser is "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 843, 236 N.W.2d 1, 4 (1975) (citing RESTATEMENT (SECOND) OF TORTS § 329, at 171 (1964)). In this case, the jury was given the following definition of a trespasser:

> One who goes upon premises owned, occupied, or possessed by another without an invitation, express or implied, extended by the owner, occupant, or possessor and solely for his pleasure, advantage or purpose is a trespasser and not a frequenter. The term "express invitation" means a specific invitation to come upon the premises. An implied invitation is one which may be reasonably assumed from the circumstances which have caused the person to be on the premises of another. When [an owner] solicits the patronage of the public in the conduct of business, the invitation could be both express and implied. Under some circumstances an invitee [sic] either express or implied may be a frequenter in one part of the premises and a trespasser in another part to which he has not been invited.[4]

---

[4] This instruction represented a combination of Wis J I—Civil 8012 and additional commentary agreed to by the par-

As we have noted, the duty owed to a trespasser by an employer, owner of employment or owner of a public building is to refrain from willfully and intentionally injuring him or her. *See Szafranski v. Radetzky*, 31 Wis. 2d 119, 125, 141 N.W.2d 902, 905 (1966). The same is true in an ordinary negligence case. *Nalepinski*, 259 Wis. at 586, 49 N.W.2d at 602. *See also Christians v. Homestake Enters., Ltd.*, 101 Wis. 2d 25, 41-42, 303 N.W.2d 608, 615-16 (1981); *Reddington v. Beefeaters Tables, Inc.*, 72 Wis. 2d 119, 125, 240 N.W.2d 363, 366 (1976); *Antoniewicz*, 70 Wis. 2d at 857-58, 236 N.W.2d at 12; *Anderson v. Green Bay & Western R.R.*, 99 Wis. 2d 514, 518, 299 N.W.2d 615, 618 (Ct. App. 1980).

In *Grossenbach*, the plaintiff was a tenant of the defendant's apartment building who was not familiar with the basement's layout and went there looking for the locker room available for use by tenants living in the building. The plaintiff had never been in the basement, did not know the location of the locker room in the basement and made no inquiry to find out. Believing it led into the locker room, the plaintiff entered through an unmarked, unlighted open door in the basement hallway which led into the building's boiler room. *Grossenbach*, 218 Wis. at 634-35, 261 N.W. at 742-43. In so doing, she fell off a platform adjacent to the doorway and onto the floor of the room, sustaining injuries. She sued the owner of the building, alleging a violation of the safe-place statute. *See id.* at 635, 261 N.W. at 743. The trial court ruled as a matter of law that in entering the boiler room the plaintiff was not a tres-

ties and approved by the trial court. We think it represents a good statement of the law in this area and we recommend it for future use.

passer, but a frequenter, and held the plaintiff to be within the protection of the statute. *Id.* at 637, 261 N.W. at 744.

The supreme court reversed, stating:

> The plaintiff while she remained in the hall or in any place in the basement maintained for the use of the tenants was an invitee. But when she went into places not maintained for the use of tenants, and to which tenants were not or she herself was not invited, either expressly or by implication, she became a trespasser. The boiler room was not maintained for the use of the tenants or for use of the public. . . . Neither by word of anybody or by implication was she invited or permitted to enter the boiler room. She was therefore a trespasser in the common and usual meaning of that word as used in the law of negligence. . . . *Thus one on premises without invitation, express or implied, extended by the owner, and solely for his [or her] own pleasure and convenience or purpose, is a trespasser.* [Emphasis added.]

*Id.* at 638, 261 N.W. at 744.[5]

In *McNally*, the plaintiff, while repairing the roof of a store, needed to ask the defendant-tenant what to do with certain items. To this end, the plaintiff descended from the roof, entered the alley door at the rear of the building and walked through several rooms to the main store area located at the front of the build-

---

[5] The supreme court also held it immaterial that a previous tenant had used the boiler room with the knowledge of the building's janitors and was never told to stay out, finding such use not "so continuous, frequent, and well established as to raise an inference of acquiescence in such use by the owner of the building." *Grossenbach v. Devonshire Realty Co.*, 218 Wis. 633, 639, 261 N.W. 742, 745 (1935).

ing. After learning from a clerk that the tenant was not present, the plaintiff turned around and began to retrace his steps. He became confused and, by mistake, went through the wrong door, into a dark vestibule and fell down the basement steps.

The plaintiff sued the owner and the tenant, alleging that the absence of a warning sign, the failure to light the stair landing and provide a handrail, and the failure to warn of the dangerous condition constituted negligence and a violation of the safe-place statute. The trial court held as a matter of law that the plaintiff was a trespasser in the area beyond the doorway to the basement stairs and granted the defendant's motion for summary judgment. *McNally*, 5 Wis. 2d at 296-99, 92 N.W.2d at 892-94.

Relying upon its earlier decision in *Grossenbach*, the supreme court affirmed. *See McNally*, 5 Wis. 2d at 300-01, 92 N.W.2d at 895. The court stated:

> We need not determine whether the facts might warrant a finding that plaintiff was a frequenter when he was walking on the direct route from the roof through the back door to the front of the store to consult [the defendant], and on the direct way back to the alley and roof. For present purposes we may assume that he was then a frequenter, *on the theory that he reasonably took that route as an incident to the repair job requested by [the defendant].*
>
> When plaintiff deviated from the direct path and turned into the vestibule at the head of the stairs *he became a trespasser as a matter of law and he was a trespasser when hurt on the stairway.* On no theory did plaintiff have any right to be in the vestibule or to use the stairway. Nothing connected with his work required or justified his presence there. He had no privilege to be there created by the [defendant's] consent or otherwise, and hence was a

trespasser. *The fact that he did not intend to use the stairway, but was confused and did so by mistake, does not prevent its being a trespass.* [Emphasis added.]

*Id.* (citations omitted). Thus, although the plaintiff was a frequenter while walking on the direct route through the building to find the tenant because his search was "*reasonably . . . incident to the repair job requested by [the defendant]*," *id.* at 301, 92 N.W.2d at 895, he became a trespasser as a matter of law once his reasonable search ceased and, without express or implied permission, he deviated from that area of the building in which he had a right to be by virtue of his employment by the defendant.

In this case, the owners did not maintain the basement area for the use of the tavern patrons, nor did they expressly or impliedly invite the patrons into the basement area. In *Grossenbach* and *McNally*, each plaintiff was seeking an ultimate destination at the time of the injury: in *Grossenbach*, the plaintiff was looking for the locker room; in *McNally*, the plaintiff was trying to find his way back to his work area. This was of no consequence to the supreme court in either case. The fact of a quest or search for a destination does not relieve the frequenter of the obligation to stay out of areas to which the public invitation does not extend. We conclude under *Grossenbach* and *McNally* that Jose lost his frequenter status and became a trespasser when he deviated from the public area of the tavern and entered into the basement area. We do not read the trial court's ruling to disagree with this conclusion.

However, the trial court determined that the supreme court's later decision in *Mustas* modified *Grossenbach* and *McNally*. The trial court concluded

that, after *Mustas*, the proper inquiry was whether "upon passing through the basement door, [Jose] was 'on a reasonable search for a proper destination.' " We now examine the trial court's application of *Mustas*.

Mustas, a truck driver, was directed by his employer to deliver a load of sand to a subcontractor at a building construction site at a shopping mall. While searching through the building in order to locate the subcontractor, Mustas slipped on an icy area and was injured. He sued the general contractor for both common law negligence and a violation of the safe-place statute. The jury found that Mustas was a frequenter in the building at the time of his fall. The general contractor appealed, arguing that the plaintiff was a trespasser as a matter of law. *Mustas*, 19 Wis. 2d at 198-200, 120 N.W.2d at 97-98.

The supreme court affirmed the jury's finding that Mustas was a frequenter. In doing so, the court noted that the critical issue was whether Mustas had first stopped at the general contractor's office to ask for directions. *Id.* at 201-02, 120 N.W.2d at 99. The court said, "If Mustas in fact received the instructions from [the general contractor], Mustas could not have been found to have been a frequenter." *Id.* at 200, 120 N.W.2d at 99. The court noted that the evidence was in conflict on this question and that the court must look for evidence which sustains the jury's finding. *See id.* at 200, 120 N.W.2d at 99. Since Mustas had given testimony which supported his contention that he had not received such instructions, the supreme court upheld the jury's determination that Mustas was a frequenter. *Id.* at 201-02, 120 N.W.2d at 99.

Addressing *McNally*, the *Mustas* court likened Mustas' nondirected search for the subcontractor to McNally's nondirected search for the tenant. *Id.* at 202,

120 N.W.2d at 99-100. To this extent, McNally's activities mirrored Mustas'. Both were seeking directions and, as a result, entitled to frequenter status even if they deviated while seeking such directions. *See id.* However, McNally's and Mustas' activities also differed. Once McNally had completed his inquiry and had been advised that the tenant was not on the premises, McNally lost his frequenter status when he deviated into an area off limits to his employment purpose. *See McNally,* 5 Wis. 2d at 301, 92 N.W.2d at 895. In contrast, Mustas was still seeking directions when he was injured. Thus, his deviation did not cost him the loss of frequenter status.

We summarize this trilogy of cases as follows:

1.   In *Grossenbach,* the plaintiff did not make any inquiry as to the location of the locker room area but, instead, simply set out looking for the area. Thus, she became a trespasser when she strayed into the uninvited boiler room.

2.   In *McNally,* for a portion of his travels, the plaintiff was seeking directions as to the location of the tenant. During that time, he was a frequenter. However, once his inquiry was answered, he became a trespasser when he deviated into a forbidden area.

3.   In *Mustas,* the plaintiff was in the process of seeking directions when he was injured. Thus, he retained his frequenter status even in the face of a deviation.

Collectively, *Grossenbach, McNally* and *Mustas* teach that when a person is reasonably seeking directions as to the location of an intended, but unknown, destination, such person is a frequenter. But where such inquiry is not made, or where the inquiry has concluded, the person's frequenter status is lost when

the person deviates into an area where he or she is not expressly or impliedly invited.

Here, assuming *Mustas* applies,[6] if Jose had entered the basement area *while seeking directions to the restroom*, he would nonetheless have been a frequenter. However, at the time of the accident, Jose had already received his directions. *Mustas* pointedly observes that if a frequenter receives instructions and is thereafter injured while in an area to which the public invitation does not expressly or impliedly extend, the frequenter becomes a trespasser. *See Mustas*, 19 Wis. 2d at 200, 120 N.W.2d at 98-99. Thus, even though the trial court rested its ruling on *Mustas*, the case does not ultimately support the court's ruling.

We do not disagree with the trial court's conclusion that *Mustas* refined the prior law in a case where the frequenter is seeking directions. However, we disagree with the breadth of the trial court's application of *Mustas* to the facts of this case.

The trial court also intimated that the *Mustas* court intended to avoid the harshness of the prior case law. Assuming that such harshness existed, we see nothing in the language of *Mustas* which suggests that its elimination was the goal of the court. Rather, as we have indicated, we see *Mustas* as simply a further refinement of frequenter/trespasser law under facts

---

[6] The parties assume that *Mustas v. Inland Construction, Inc.*, 19 Wis. 2d 194, 120 N.W.2d 95 (1963), applies to the facts of this case and we address the issue accepting that premise. However, we question whether the supreme court intended *Mustas* to apply to the markedly different facts of this case. In *Mustas*, the plaintiff was seeking an isolated destination in a large shopping mall complex. Here, Jose was seeking a restroom in a limited and confined tavern area.

where the claimant is injured while seeking directions to an intended, but unknown, area.

*By the Court.*—Judgment and order reversed.