COURT OF APPEALS
DECISION
DATED AND FILED

November 9, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2020AP1777**
**2020AP1892**

Cir. Ct. No. 2019CV240

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

NO. 2020AP1777

KHILEY M. JOHNSON, BY HER GUARDIAN AD LITEM,
BRIAN F. LAULE AND ERICA BURRI,

PLAINTIFFS-APPELLANTS,

V.

MARSHFIELD CLINIC HEALTH SYSTEM, INC. AND PROASSURANCE
CASUALTY COMPANY,

DEFENDANTS-THIRD-PARTY
PLAINTIFFS-RESPONDENTS,

NATE'S LAWN SERVICE, LLC AND SOCIETY INSURANCE,
A MUTUAL COMPANY,

DEFENDANTS-RESPONDENTS,

BLUE CROSS BLUE SHIELD OF TEXAS,

DEFENDANT,

V.

JUDY BALOG,

    THIRD-PARTY DEFENDANT.

_____

NO. 2020AP1892

KHILEY M. JOHNSON, BY HER GUARDIAN AD LITEM,
BRIAN F. LAULE AND ERICA BURRI,

    PLAINTIFFS,

  V.

MARSHFIELD CLINIC HEALTH SYSTEM, INC. AND PROASSURANCE
CASUALTY COMPANY,

    DEFENDANTS-THIRD-PARTY
    PLAINTIFFS-APPELLANTS,

NATE'S LAWN SERVICE, LLC AND SOCIETY INSURANCE,
A MUTUAL COMPANY, BLUE CROSS BLUE SHIELD OF TEXAS,

    DEFENDANTS,

  V.

JUDY BALOG,

    THIRD-PARTY DEFENDANT-RESPONDENT.

_____

        APPEALS from judgments of the circuit court for Barron County: J. MICHAEL BITNEY, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings*.

        Before Stark, P.J., Hruz and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Khiley Johnson appeals a summary judgment granted in favor of Marshfield Clinic Health System, Inc. (Marshfield Clinic) and its insurer, Proassurance Casualty Company. Johnson was injured after a concrete bollard fell on her big toe in a vacant parking lot of Marshfield Clinic; she was twelve years old at the time. The circuit court concluded that Marshfield Clinic did not owe a duty of care to Johnson because she was a trespasser and no exceptions to that rule applied. On appeal, Johnson argues that genuine issues of material fact exist as to whether she had implied consent to enter the parking lot. She also argues that genuine issues of material fact exist on each condition of the child trespasser exception under WIS. STAT. § 895.529(3)(b) (2019-20).[1]

¶2 We agree with both of Johnson's arguments. We first conclude that genuine issues of material fact exist as to whether Johnson had implied consent to enter the parking lot because there is evidence that: (1) children used the lot; (2) Marshfield Clinic acquiesced to such use; and (3) Johnson entered the lot to catch her younger brother. We also conclude that genuine issues of material fact exist on each condition of the child trespasser exception. We therefore reverse the judgment in favor of Marshfield Clinic and remand for further proceedings consistent with this opinion.

¶3 Johnson also appeals a grant of summary judgment in favor of Nate's Lawn Service, LLC (Nate's) and its insurer, Society Insurance, a mutual

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

company.[2]   At the direction of Marshfield Clinic, Nate's placed the concrete bollards at the entrance of the parking lot several months before Johnson's injury. The circuit court concluded that Nate's was not negligent, and even if it was, public policy considerations precluded liability.  Assuming without deciding that Nate's was negligent, we conclude that public policy factors preclude holding Nate's liable, and we therefore affirm the grant of summary judgment in favor of Nate's.

¶4      Finally, Marshfield Clinic appeals a grant of summary judgment on its third-party claim of negligent supervision against Johnson's grandmother, Judy Balog.  The circuit court concluded that Johnson's injury was not foreseeable, therefore barring Balog's potential liability.  Marshfield Clinic argues on appeal that Balog had a duty of care because leaving children unsupervised near public streets creates a foreseeable risk of harm.  It also argues that public policy considerations do not preclude Balog's potential liability.  We conclude that genuine issues of material fact exist as to whether Johnson's injury was foreseeable and that public policy considerations do not preclude her liability. Accordingly, we reverse the judgment in favor of Balog as part of our remand for further proceedings.

## BACKGROUND

¶5      In April 2018, twelve-year-old Johnson and her three-year-old brother Kole were sitting outside of Balog's home, watching a nearby duck or

---

[2] All arguments in this appeal by Marshfield Clinic and by Nate's, and our dispositions of those arguments, apply equally to their insurers involved in this action, Proassurance Casualty Company and Society Insurance, respectively.

goose. Balog was responsible for watching over the two children that day, and she instructed Johnson to keep her brother away from the bird because Kole wanted to chase it. Balog worked in her yard while Johnson and Kole continued watching the bird. Balog eventually went around to the opposite side of her home, losing sight of the children for approximately ten minutes.

¶6    At some point during those ten minutes, Kole began chasing the bird. Johnson subsequently ran after him to prevent him from running into a nearby road. Kole ignored Johnson's pleas to stop, and he ran toward a vacant parking lot after Johnson diverted him from the road. In the pursuit, Johnson ran between several concrete bollards that blocked vehicles from entering the lot. The bollards stood several feet tall, weighed roughly 350 pounds, and were spaced several feet apart. As Johnson ran between the bollards, she grabbed onto the middle bollard to slow herself down. In doing so, the bollard fell over and crushed her big toe.

¶7    Marshfield Clinic owned the parking lot where Johnson's injury took place. The lot had provided overflow parking to a nearby clinic that was vacated in 2008 and demolished around 2016. Near the middle of the parking lot, a small sign was affixed to a light pole that stated, "PRIVATE PROPERTY NO SKATEBOARDING BICYCLES LOITERING." Despite the sign, people occasionally walked through the parking lot. Marshfield Clinic had received complaints from neighbors surrounding the parking lot that people were setting up campers in the lot and that people were partying in the lot. Because Balog's backyard was next to the lot, Balog had parked her travel trailer partially on her property's grass and partially on the lot. Eventually, a Marshfield Clinic employee

notified Balog that the lot would be blocked off, and he suggested that Balog remove her trailer from the lot.

¶8      In September 2017, roughly seven months before Johnson's injury, Marshfield Clinic hired Nate's—Marshfield Clinic's existing lawn care servicer—to move several concrete bollards from behind a shed to the vacant parking lot. A Marshfield Clinic employee suggested hiring Nate's because it had the equipment necessary to move the bollards. Marshfield Clinic directed Nate's to place the bollards at the lot's entrances "to temporarily block vehicles from entering the lot," but it did not direct Nate's to secure the bollards to the ground. After Nate's placed the bollards where Marshfield Clinic directed, it had no further involvement with the bollards or the parking lot. Nate's charged Marshfield Clinic $112.50 to move the bollards.

¶9      After Johnson's injury, Balog examined the fallen bollard and noticed that it was not secured to the ground, that it was rounded on the bottom, and that she could "wiggle[]" it with very little force. Johnson later commenced this negligence action against Marshfield Clinic and Nate's. Marshfield Clinic subsequently filed a third-party complaint against Balog, alleging that Balog's negligent supervision caused Johnson's injuries.

¶10     Marshfield Clinic moved for summary judgment on Johnson's claims. The circuit court granted summary judgment in favor of Marshfield Clinic, concluding that Johnson was a trespasser under WIS. STAT. § 895.529, such that Marshfield Clinic owed no duty of care to Johnson, *see* § 895.529(2), and that no exception applied to that statutory provision. The court rejected Johnson's argument that the child trespasser exception under § 895.529(3)(b) applied, stating that the bollards did not create an inherently dangerous situation to children, nor

6

were they inherently attractive to children.  The court did not expressly discuss Johnson's implied consent argument, but it recognized the parking lot's historic use and noted that the lot had a sign that stated, "Keep off … [or] something of that nature."

¶11     Nate's also moved for summary judgment on Johnson's claims.  The circuit court granted Nate's motion, concluding, among other things, that allowing a jury to hold Nate's liable "would contravene public policy" because

> [t]his is a lawn service company that had nothing to do with the manufacture of these [bollards], they had nothing to do with the decision to put the [bollards] up or where to put them, they were simply directed by virtue of [Marshfield Clinic] saying, when you're done mowing the lawn, or words to that effect, put these [bollards] up across the entrance to the parking lot.

¶12     Finally, Balog moved for summary judgment on Marshfield Clinic's third-party claim.  The circuit court granted summary judgment in favor of Balog, concluding that Balog did not breach a duty because Johnson's injury was not foreseeable.  Accordingly, the court dismissed Johnson's claims against Marshfield Clinic and Nate's, and it dismissed Marshfield Clinic's claim against Balog.  Both Johnson and Marshfield Clinic now appeal.[3]

---

[3] Johnson's and Marshfield Clinic's appeals were assigned case Nos. 2020AP1777 and 2020AP1892, respectively.  We instructed the parties to submit their appeals together, and after reviewing the briefs, we decided on our own motion to consolidate the appeals by order dated October 27, 2021.

## DISCUSSION

¶13    We review a circuit court's summary judgment decision de novo, employing the same methodology as the circuit court.  ***Chapman v. B.C. Ziegler & Co.***, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425.  Summary judgment must be granted if the pleadings, depositions, answers to interrogatories, admissions and affidavits establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  WIS. STAT. § 802.08(2).  Inferences to be drawn from the summary judgment materials are viewed in the light most favorable to the party opposing the motion. ***Lambrecht v. Estate of Kaczmarczyk***, 2001 WI 25, ¶23, 241 Wis. 2d 804, 623 N.W.2d 751.

### I.  Johnson's claim against Marshfield Clinic

¶14    Johnson argues that the circuit court erred by concluding that Marshfield Clinic owed no duty to her because:  (1) genuine issues of material fact exist regarding whether she had implied consent to enter the parking lot; (2) she had Marshfield Clinic's implied consent as a matter of law to enter the lot because she was trying to protect her brother; and (3) genuine issues of material fact remain regarding whether the child trespasser exception applies.

#### A.  Implied consent

¶15    Except as provided in WIS. STAT. § 895.529(3), a possessor of real property owes no duty of care to a trespasser.  Sec. 895.529(2).  However, a person who has express or implied consent to enter or remain upon property in the possession of another is not a "trespasser" within the meaning of subsec. (2). *See* § 895.529(1)(b).  Implied consent may be found "from the conduct of the owner,

from the relationship of the parties, or by custom." ***Fandrey ex rel. Connell v. American Fam. Mut. Ins. Co.***, 2004 WI 62, ¶36 n.13, 272 Wis. 2d 46, 680 N.W.2d 345 (citation omitted). Implied consent exists when a reasonable person, having knowledge of the owner's conduct, would believe that the owner gave consent to come upon the premises. ***Verdoljak v. Mosinee Paper Corp.***, 192 Wis. 2d 235, 243, 531 N.W.2d 341 (Ct. App. 1995); *see also* WIS JI—CIVIL 8015 (2013).

¶16　Johnson argues that genuine issues of material fact exist as to whether she had implied consent because people customarily used the lot and Marshfield Clinic acquiesced to such use. Conversely, Marshfield Clinic argues that no reasonable person in Johnson's position would believe that Marshfield Clinic consented to the person entering the lot because Marshfield Clinic: (1) posted a private property sign that prohibited loitering; (2) placed bollards at the lot's entrance; and (3) instructed Balog—who, in turn, instructed Johnson—to stay off the lot.

¶17　Johnson presented evidence that people, including herself, customarily used the lot. She testified during her deposition that she and Kole played in the lot "on a number of occasions" before the bollard fell on her toe. Likewise, Balog testified that children played in the lot and that people walked through the parking lot "all the time." Gerald Manier, a former Marshfield Clinic facilities manager, testified that employees from a nearby nursing home, unaffiliated with Marshfield Clinic, sometimes used the lot.

¶18　Johnson also presented evidence that Marshfield Clinic acquiesced to this customary use. An owner's knowledge of another entering his or her land and the owner's resulting behavior is a "key factor" in finding implied consent.

9

*Fandrey*, 272 Wis. 2d 46, ¶36 n.13. Though Marshfield Clinic placed bollards at the lot's entrances, one could infer that this action was only a limited response to specific complaints that people set up campers and partied in the lot. James Draganowski, a building services manager for Marshfield Clinic, testified that, to his knowledge, the bollards were only used to prevent vehicles from entering the lot. Additionally, Balog testified that a Marshfield Clinic employee had only suggested that she move her camper from the lot. Balog also testified that even after Marshfield Clinic placed the bollards, children continued using the lot "all the time" and on "a daily basis." A fact finder could thus reasonably infer that Marshfield Clinic knew about, and acquiesced to, children using the lot.

¶19 Contrary to Marshfield Clinic's arguments, the existence of the private property sign, while probative, is not dispositive of whether implied consent was granted because it did not forbid entry into the lot. The sign communicated that the property belonged to another, and it expressly prohibited skateboarding, bicycling and loitering. Johnson testified that she did not know the meaning of the word "loiter." Even if she had, the word loitering generally requires that a person stand, linger or remain idle in a certain place. *See State v. Starks*, 51 Wis. 2d 256, 260-61, 186 N.W.2d 245 (1971). A fact finder could therefore conclude that a reasonable person in Johnson's position would not believe that the sign prohibited him or her from briefly entering the lot for a non-prohibited purpose.

¶20 In arguing that Johnson was instructed to stay out of the parking lot, Marshfield Clinic improperly relies on disputed facts. Johnson testified unequivocally that no one ever told her to stay out of the lot, directly contradicting Balog's testimony that she had instructed Johnson to keep out. Johnson also

testified that she did not know the lot was private property, nor did she know that the lot had a private property sign. A fact finder could therefore find that Johnson never knew or believed that she should stay out of the lot.

¶21 Marshfield Clinic analogizes this case to *Monsivais v. Winzenried*, 179 Wis. 2d 758, 508 N.W.2d 620 (Ct. App. 1993), in which we concluded, as a matter of law, that a man was a trespasser when he entered through a private door of a tavern and fell down a flight of stairs. *Id.* at 761-62. Marshfield Clinic argues that it took even more action to deter entry into the relevant space than did the tavern in *Monsivais*, which only posted an unlit sign that stated, "Private." *Id.* at 761. *Monsivais*, however, did not involve the same issues as in this appeal. In that case, the court discussed the contours of a person's status as a frequenter or trespasser when the person attempted to reach an intended, but unknown, destination within a building. *Id.* at 771-72. *Monsivais* did not involve the present issues regarding customary use—much less the use of parking lot—or the property owner's response to such use, nor did the case turn on the existence of the "Private" sign.

¶22 In addition to arguing that genuine issues of material fact exist regarding implied consent, Johnson argues that she had implied consent as a matter of law because she entered to protect her brother. In support, Johnson cites part of a comment in the Restatement (Second) of Torts, which provides:

> "The well-established usages of a civilized and Christian community" entitle everyone to assume that a possessor of land is willing to permit him [or her] to enter for certain purposes until a particular possessor expresses unwillingness to admit him [or her]. Thus a traveler who is overtaken by a violent storm or who has lost his [or her] way, is entitled to assume that there is no objection to his [or her] going to a neighboring house for shelter or direction.

11

RESTATEMENT (SECOND) OF TORTS § 330 cmt. e. (AM. L. INST. 1965). Johnson also cites several cases for the proposition that individuals can enter private property in emergency situations. Marshfield Clinic responds that Johnson failed to make these arguments to the circuit court, thereby forfeiting the argument on appeal. Nonetheless, Marshfield Clinic also argues that Wisconsin has not adopted Johnson's cited portion of the Restatement (Second) of Torts and that Johnson's cited cases are non-binding and distinguishable.

¶23 Assuming, without deciding, that Johnson did not forfeit this argument, we cannot conclude, as a matter of law, that she had implied consent because she entered the lot to catch her brother. No Wisconsin court has expressly adopted comment e. to § 330 of the Restatement (Second) of Torts. Additionally, Johnson only cites one Wisconsin case in support, and that case does not discuss or rely on any societal custom in reaching its conclusion. *See Monsivais*, 179 Wis. 2d at 771. Instead, the *Monsivais* court discussed previous case law before concluding that those cases "teach that when a person is reasonably seeking directions as to the location of an intended, but unknown, destination, such person is a frequenter." *Id.* at 771. Thus, the holding and rationale of *Monsivais* is inapplicable to the instant case.

¶24 In any event, comment e. to § 330 of the Restatement (Second) of Torts recognizes that a societal custom is not dispositive of consent when the possessor of land "expresses unwillingness to admit [a person]." *See* RESTATEMENT (SECOND) OF TORTS § 330 cmt. e. Similar to Wisconsin law on implied consent, comment e. states that "the decisive factor" is whether a reasonable person would believe that the possessor of land consented. *See id.*; *see also Verdoljak*, 192 Wis. 2d at 243.

12

¶25 Here, Marshfield Clinic presented evidence that it posted a private property sign in the parking lot and placed bollards at the lot's entrances, and that Balog instructed Johnson not to enter the lot. What a reasonable person would believe in Johnson's position turns on the totality of the facts and circumstances and cannot be easily disposed of on summary judgment. *See* ***Preloznik v. City of Madison***, 113 Wis. 2d 112, 122 n.3, 334 N.W.2d 580 (Ct. App. 1983). Ultimately, we cannot conclude, as a matter of law, that Johnson had implied consent to enter the lot simply because she was attempting to catch her brother. Johnson may nevertheless seek to present at trial her motivation for entering the lot as evidence of what a reasonable person in her position would have believed. Johnson's desire to catch her brother further supports our conclusion that genuine issues of material fact exist as to whether she had implied consent to enter the lot.

¶26 In sum, we conclude genuine issues of material fact remain regarding whether a reasonable person in Johnson's position would have believed that Marshfield Clinic consented to the person entering the parking lot. We therefore reverse the circuit court's grant of summary judgment on Johnson's negligence claim against Marshfield Clinic.

B. *Child trespasser exception under* WIS. STAT. *§ 895.529(3)(b)*

¶27 Johnson next argues that genuine issues of material fact remain on each element of the child trespasser exception under WIS. STAT. § 895.529(3)(b).[4]

---

[4] The applicability of the child trespasser exception will only become relevant if the fact finder first determines that Johnson was a trespasser because she did not have Marshfield Clinic's implied consent to enter the parking lot.

13

Subsection (3)(b) provides that a possessor of real property may be liable for injury or death to a child trespasser if all of the following apply:

> 1. The possessor of real property maintained, or allowed to exist, an artificial condition on the property that was inherently dangerous to children.
>
> 2. The possessor of real property knew or should have known that children trespassed on the property.
>
> 3. The possessor of real property knew or should have known that the artificial condition he or she maintained or allowed to exist was inherently dangerous to children and involved an unreasonable risk of serious bodily harm or death to children.
>
> 4. The injured or killed child, because of his or her youth or tender age, did not discover the condition or realize the risk involved in entering onto the property, or in playing in close proximity to the inherently dangerous artificial condition.
>
> 5. The possessor of real property could have reasonably provided safeguards that would have obviated the inherent danger without interfering with the purpose for which the artificial condition was maintained or allowed to exist.

To prevail on summary judgment, Marshfield Clinic must establish, as a matter of law, that no reasonable jury could find that every condition under § 895.529(3)(b) applies. *Cf. **Nechodomu v. Lindstrom***, 273 Wis. 313, 318, 324, 77 N.W.2d 707 (1956) (concluding that the trial evidence presented a question of fact for the jury to determine whether the condition was inherently dangerous to children and whether the plaintiff failed to realize the risk involved with the condition because of his tender years).

¶28　Beginning with WIS. STAT. § 895.529(3)(b)1., Marshfield Clinic argues—consistent with the circuit court's conclusions—that the bollard was not "inherently dangerous to children" because a bollard is not "attractive" to children

14

and because Johnson observed another girl move a bollard. Marshfield Clinic's arguments are misplaced. First, the child trespasser exception under § 895.529(3)(b), by its plain language, does not require that a child be attracted, enticed or allured onto the property or to the artificial condition. *See also **Brady v. Chicago & N. W. R. Co.***, 265 Wis. 618, 623, 62 N.W.2d 415 (1954). Therefore, whether a child is attracted to a bollard is not dispositive of our analysis.

¶29 Second, contrary to Marshfield Clinic's arguments, Johnson's prior knowledge of the bollards is not dispositive of whether a condition is inherently dangerous to children. A condition is inherently dangerous to children if the risk of a condition is hidden from children or if children would fail to appreciate the risk because of their immaturity. *See **Mazurkiewicz v. Pawinski***, 32 Wis. 2d 211, 217, 145 N.W.2d 186 (1966). The test is objective, focusing on what children in general would notice or appreciate, not what the injured child knew or appreciated. *See **Schilz v. Walter Kassuba, Inc.***, 27 Wis. 2d 390, 394, 134 N.W.2d 453 (1965) (considering whether children would recognize the risk involved in jumping from pipes that extended from the ground). Thus, although Johnson saw another girl move a bollard, such observation is not dispositive of whether children generally would nevertheless fail to appreciate the risk of the bollard falling over if touched.

¶30 Here, Johnson testified that she grabbed onto the bollard because it looked heavy, which supports an inference that the bollard appeared stable to Johnson. Consistent with that inference, a Marshfield Clinic employee, Josh Nowak, testified that because of the weight of the bollard, a "child shouldn't [be] able to push the bollard over." A fact finder could thus infer that the bollard would appear stable to a child, and any instability would be hidden. A fact finder could also infer that this instability would be dangerous to children. Balog

testified that the bollard "wobbled" with little force and could tip over because the base was uneven—something she only noticed when the bollard was tipped over. Genuine issues of material fact therefore exist as to whether the bollard was inherently dangerous to children because a fact finder could reasonably find that the bollard's instability was hidden and dangerous to children generally.

¶31　Moving on to WIS. STAT. § 895.529(3)(b)2., genuine issues of material fact remain regarding whether Marshfield Clinic knew or should have known that children trespassed in the parking lot. As discussed previously, Balog testified that children used the lot all the time and never stopped using the lot, even after the bollards were placed at the entrances. Thus, a fact finder could reasonably infer that Marshfield Clinic knew or should have known that children trespassed in the lot.

¶32　As to WIS. STAT. § 895.529(3)(b)3., Marshfield Clinic argues that it could not have known the bollards were inherently dangerous to children because it only knew that a vehicle could tip one over. Genuine issues of material fact exist, however, as to whether Marshfield Clinic should have known that the bollards were inherently dangerous to children and involved an unreasonable risk of serious bodily harm to children. Again, evidence exists that children used the parking lot "all the time." Erica Burri and Balog testified, respectively, that that the bollard was not placed on a flat surface and that the bollard's base was rounded on the bottom. A Marshfield Clinic employee, Josh Nowak, acknowledged that the bollards should not be located in a place where they would be "wobbly or tippy." Additionally, Marshfield Clinic had knowledge of bollards tipping over—albeit after being hit by a vehicle—and knew or should have known that the bollards were not secured to the ground because it never instructed Nate's

to secure the bollards. Finally, multiple Marshfield Clinic employees acknowledged that the bollards could cause injury if tipped over.

¶33 Regarding WIS. STAT. § 895.529(3)(b)4., Marshfield Clinic again argues that Johnson "clearly knew of the potential risks associated with the [bollards] because she saw a girl her own age move one … before the relevant incident." Johnson's prior observation is more relevant to this condition than subsec. (3)(b)1. Still, we disagree that such conclusion can be reached, as a matter of law, upon this record. Johnson testified that she saw another girl move a bollard by turning it, but she never testified that the bollard appeared unstable, or that it tipped in any manner. While Johnson may have realized that the turned bollard was not secured to the ground, a question of fact remains as to whether Johnson knew or believed that the other bollards were also unsecured. Johnson also testified that she never touched any of the bollards before the underlying incident, and that she thought she could grab onto the bollard because it appeared heavy. A fact finder could reasonably infer from this evidence that Johnson did not discover the instability of the bollard before grabbing it.

¶34 Furthermore, even if we could conclude, as a matter of law, that Johnson discovered the instability of the bollard, Johnson's testimony still creates a genuine issue of material fact as to whether she appreciated the risk posed by the bollard. The child trespasser exception can apply when the child knows of the condition but does not appreciate the risk of the condition. *See* WIS. STAT. § 895.529(3)(b)4.; *see also* ***Brady***, 265 Wis. at 624; ***Christians v. Homestake Enters., Ltd.***, 101 Wis. 2d 25, 55, 303 N.W.2d 608 (1981). Johnson testified that the bollard looked heavy and that she thought she could grab it to slow herself

down.  A fact finder could thus infer from Johnson's actions and beliefs that she did not appreciate the risk that the bollard could fall over.

¶35    Marshfield Clinic fails to make any argument as to the final requirement under WIS. STAT. § 895.529(3)(b)5.  Marshfield Clinic therefore concedes the issue.  *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979).  In any event, genuine issues of material fact exist on this condition because there is evidence that Marshfield Clinic could have secured the bollards with in-ground metal posts.  Evidence also exists that Marshfield Clinic could have closed the lot using other methods such as barriers or "chain posts."

¶36    All in all, we cannot conclude, as a matter of law, that no reasonable juror could conclude that each condition was satisfied under WIS. STAT. § 895.529(3)(b).  Marshfield Clinic therefore failed to establish, as a matter of law, that the child trespasser exception in § 895.529(3)(b) is inapplicable in this case.  Accordingly, Marshfield Clinic was not entitled to summary judgment on Johnson's negligence claim because Johnson could establish that Marshfield Clinic owed her a duty under the child trespasser exception.

## II.  Johnson's claim against Nate's

¶37    Johnson also argues that genuine issues of material fact exist regarding whether Nate's was negligent.  In addition, she contends that public policy considerations do not preclude her claim against Nate's.  Because our public policy analysis is dispositive of Johnson's claim, we assume, without deciding, that Nate's negligently moved the bollards and that its negligence was a

18

cause of Johnson's injuries. *See **Casper v. American Int'l S. Ins. Co.***, 2011 WI 81, ¶93, 336 Wis. 2d 267, 800 N.W.2d 880.

¶38    Johnson argues that the circuit court erred in considering whether public policy factors precluded her claim against Nate's because the underlying facts were complex, and the record was undeveloped. She explains that no employees of Nate's have been deposed, and that its summary judgment motion only relied on an affidavit. Both with respect to the foregoing and more generally, Johnson's arguments regarding the public policy factors are largely undeveloped.

¶39    Generally, a court should submit a case to the jury before determining whether public policy considerations preclude liability. ***Gritzner v. Michael R.***, 2000 WI 68, ¶26, 235 Wis. 2d 781, 611 N.W.2d 906. However, when the facts are not complex and the relevant public policy questions have been fully presented, a court may determine whether public policy precludes liability before trial. ***Id.***

¶40    We may address the public policy questions here because the underlying facts with respect to Nate's are not complex or disputed, and the parties have addressed the relevant public policy questions. The undisputed facts show that Marshfield Clinic directed Nate's to move the bollards to the entrances of the parking lot and that Nate's followed Marshfield Clinic's directions. Johnson fails to explain how these facts are complex. Despite her concern that no employees have been deposed, Johnson has not shown that she sought such discovery, that Nate's failed to comply with her discovery requests, or what information she would expect to obtain from such discovery. She cannot now argue that the record is undeveloped because she failed to depose someone from Nate's, as a party

19

cannot complain when he or she leaves the court in an evidentiary vacuum. *See Popp v. Popp*, 146 Wis. 2d 778, 796, 432 N.W.2d 600 (Ct. App. 1988).

¶41    Whether public policy considerations preclude liability is a question of law that we review de novo. *Gritzner*, 235 Wis. 2d 781, ¶27. The six public policy factors that may preclude liability are:

> (1) the injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) [allowing] … recovery would place too unreasonable a burden on the negligent tortfeasor; or (5) [allowing] … recovery would be too likely to open the way for fraudulent claims; or (6) [allowing] … recovery would enter a field that has no sensible or just stopping point.

*Casper*, 336 Wis. 2d 267, ¶94 (citation omitted). Liability may be precluded on the basis of any one of these factors. *Id.*, ¶95.

¶42    Nate's argues that several public policy considerations preclude liability. It contends that its culpability is minimal and wholly out of proportion to Johnson's injuries because Marshfield Clinic owned the bollards, had experience installing the bollards, and hired Nate's to simply move the bollards. Nate's also argues that recovery would impose an unreasonable burden on it because it only provided unskilled labor for a nominal fee.

¶43    We agree that, on this record, Johnson's injury is too wholly out of proportion to the culpability of Nate's. Johnson suffered a significant injury to her big toe. However, the culpability of Nate's in moving the bollards is minimal. Marshfield Clinic owned the bollards, decided to use them, and directed Nate's to place them at the entrances of the vacant parking lot. Despite Marshfield Clinic's

experience installing and securing the bollards, Marshfield Clinic did not direct Nate's to secure the bollards to the ground. Marshfield Clinic simply hired Nate's because Marshfield Clinic did not have the equipment necessary to move the bollards and because Marshfield Clinic knew, from its prior relationship with Nate's, that Nate's could move the bollards.

¶44 Johnson does not refute in her reply brief the proposition that the culpability of Nate's is minimal as compared to her injury. Instead, she argues that issues of culpability will be resolved when a fact finder considers comparative negligence under WIS. STAT. § 895.045. Johnson's argument misses the mark. The question here is not whether Nate's was contributorily negligent. We assume for our analysis that it was. The question is whether Johnson's injury is too wholly out of proportion to the culpability of Nate's. As explained, we conclude that it is because Nate's simply moved the bollards at the direction of Marshfield Clinic.

¶45 We also conclude that allowing recovery against Nate's would place too unreasonable a burden on it. Again, Marshfield Clinic decided to use the bollards, and it directed Nate's to move the bollards to the parking lot entrances. Nate's provided unskilled physical labor and mechanical power that Marshfield Clinic lacked, and it charged only $112.50 to move the bollards. Traditionally, Nate's had only provided lawn mowing, landscaping, and snow removal services to Marshfield Clinic. Under these circumstances, it would be unreasonable for Nate's to do anything more than what Marshfield Clinic directed. Because Nate's moved the bollards solely at the direction of Marshfield Clinic, it would be too unreasonable a burden to permit recovery against it.

¶46    Johnson argues that allowing recovery would not impose an unreasonable burden on Nate's because its negligence will be determined based on the reasonable person standard.    Johnson's reliance on the reasonable person standard is also misplaced.    The reasonable person standard helps determine whether a party is negligent.  *See Gritzner*, 235 Wis. 2d 781, ¶22.  But again, we assume that Nate's acted negligently, and we therefore assume that it did not use the care that a reasonable person would use in similar circumstances. Notwithstanding that assumption, we may consider whether allowing recovery would impose too unreasonable a burden on Nate's.  *See id.*, ¶¶24, 27.   As explained, recovery here would place too unreasonable a burden on Nate's.

¶47    In conclusion, we assume, without deciding, that Nate's acted negligently in moving the bollards.   Nonetheless, the second and fourth public policy factors preclude imposing liability on Nate's under the circumstances of this case.   Accordingly, we affirm the circuit court's grant of summary judgment in favor of Nate's.

## III.  Marshfield Clinic's claim against Balog

¶48    Marshfield Clinic argues that the circuit court erred by concluding that Balog owed no duty of care to Johnson because Johnson's particular injury was unforeseeable.    In particular, Marshfield Clinic contends that Balog's argument to the court was contrary to long-held Wisconsin law that a duty of care exists if a person could foresee any harm to any person as a result of his or her conduct.   Marshfield Clinic further argues that either Johnson or Kole could foreseeably have been harmed by Balog placing Johnson in charge of Kole near a public road, especially outside of Balog's view.

22

¶49    Whether a duty exists under a specific set of circumstances is a question of law that we review de novo. *Brenner v. Amerisure Mut. Ins. Co.*, 2017 WI 38, ¶12, 374 Wis. 2d 578, 893 N.W.2d 193. In Wisconsin, everyone has a duty to act with reasonable and ordinary care under the circumstances. *Hornback v. Archdiocese of Milwaukee*, 2008 WI 98, ¶21, 313 Wis. 2d 294, 752 N.W.2d 862. A person does not exercise ordinary care under the circumstances, and is therefore negligent, if the person, without intending to do harm, acts, or fails to do an act, that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property. *Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶30, 291 Wis. 2d 283, 717 N.W.2d 17. Ordinary care involves the concept of foreseeability, in that a reasonable person exercising ordinary care would have foreseen injury as a consequence of his or her act. *Id.*

¶50    While the existence of a duty is a question of law, duty is a question reserved for the jury in the vast majority of cases. *See Tesar v. Anderson*, 2010 WI App 116, ¶11 n.13, 329 Wis. 2d 240, 789 N.W.2d; *see also Nichols v. Progressive N. Ins. Co.*, 2008 WI 20, ¶12, 308 Wis. 2d 17, 746 N.W.2d 220. In certain cases, however, we may hold that no duty exists as a matter of law because the damage or injury was not a reasonably foreseeable consequence of the defendant's act or omission, and that no reasonable jury could find otherwise. *Tesar*, 329 Wis. 2d 240, ¶11 n.13.

¶51    This is not a case where we can conclude, as a matter of law, that harm to someone, such as to Johnson, was not a reasonably foreseeable consequence of Balog's actions. Balog testified that she was responsible for watching over Johnson and Kole when Johnson was injured. She also testified that she would not have left Johnson home alone at age twelve, much less home

alone while Kole was in Johnson's care. Balog instructed Johnson, then a twelve-year-old girl,[5] to watch over her three-year-old brother. At that time, Johnson and Kole were in an unfenced yard, near the back corner of Balog's home and a public street. Balog also knew that Kole was fixated on a bird and wanted to chase it. Yet Balog lost sight of the children for about ten minutes when she moved to the opposite side of the house. When asked whether she was surprised that Kole ran after the bird, Balog stated, "Not at all." Based on the underlying facts and circumstances, a jury could find that it was reasonably foreseeable that harm to someone could result from Balog instructing Johnson to watch over Kole. Like what occurred here, one could foresee Kole running after the bird and into a situation, such as the road, that placed him, Johnson or another person in harm's way.

¶52    Despite acknowledging that Wisconsin has adopted the minority view in *Palsgraf v. Long Island Railroad Co.*, 162 N.E. 99 (N.Y. 1928), Balog argues that we must consider who was actually hurt and whether it was "foreseeable that leaving a twelve-year-old in charge of a three-year-old would result in injury to the twelve-year-old[.]" Balog further contends that "it was unforeseeable that delegating the responsibility to watch Kole would result in [Johnson] grabbing a concrete [bollard] and injuring her foot." Still, Balog tacitly recognizes that it may be foreseeable that Kole could be injured under the

---

[5] In arguing that her actions did not cause foreseeable harm, Balog emphasizes that Johnson was twelve years old. Balog contends that twelve-year-olds do not need supervision and can babysit. Reasonable minds could differ, however, as to whether Johnson was old enough to watch Kole under the circumstances. Therefore, Johnson's relative age is a factor for the jury to consider when determining whether Balog was negligent under the circumstances.

circumstances, stating that "one would expect [Balog's] supposedly negligent act to cause injury to Kole."

¶53    Balog's attempt to limit our analysis to only the foreseeability of Johnson's particular injury is contrary to established Wisconsin law.  As noted, Wisconsin courts have rejected the majority view in *Palsgraf* that the existence of a duty of care depends upon whether injury to the particular victim was foreseeable, including in one of the cases on which Balog purports to rely.  *See Gritzner*, 235 Wis. 2d 781, ¶20 n.3.  A defendant's duty is established when it was foreseeable that the defendant's action or omission could cause harm to someone. *A. E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 484, 214 N.W.2d 764 (1974).  Once negligence is established—that is, the defendant is found to have breached this duty and caused harm—a party is liable for both foreseeable and unforeseeable consequences, and is liable to foreseeable and unforeseeable plaintiffs.  *See id.*  Although Johnson's specific injury may not have been foreseeable, a fact finder could find that it was foreseeable that someone, including Johnson, could be harmed as a result of Balog directing Johnson to watch a three-year-old without any additional supervision under the circumstances present here.

¶54    Balog analogizes this case to *Szep v. Robinson*, 20 Wis. 2d 284, 121 N.W.2d 753 (1963).  In that case, a sixteen-year-old baby-sitter was severely burned after pots boiled over on the stove, and she attempted to remove the pots using a terry-cloth towel.  *Id.* at 286.  The baby-sitter alleged that the defendant parents were negligent for:  (1) failing to provide a hot pad; (2) failing to place the pots on smaller burners or to turn the larger burners on low; (3) failing to instruct her on the use of the stove; and (4) failing to lock the basement door so as to keep

the children upstairs and to allow her to watch the stove. *Id.* at 291-92. Our supreme court ultimately concluded that the harm to the baby-sitter was not reasonably foreseeable as a consequence of the defendants' alleged conduct. *Id.*

¶55 *Szep* is inapplicable to the issue at hand. The *Szep* court never considered whether it was foreseeable that someone—i.e., the baby-sitter *or* the children—could be injured as a result of the defendant parents delegating supervisory authority over the children to a sixteen-year-old baby-sitter. Instead, the court considered whether the parents' alleged actions or inactions could foreseeably result in harm. *Id.* at 291-92. Here, the issue is whether it was foreseeable that someone would be harmed as a result of Balog delegating the supervision of a three-year-old to twelve-year-old Johnson. Because a fact finder could find that it was foreseeable that someone would be injured under those circumstances, the issue of foreseeability cannot be resolved on summary judgment, and we cannot conclude, as a matter of law, that Balog had no duty of care.

¶56 Balog next argues that even if she was negligent, public policy factors preclude liability. She first contends that Johnson's injury is too remote from her alleged negligence because several intervening events occurred between her actions and the bollard falling on Johnson. We disagree. Johnson's injury was not separated from Balog's assumed negligence "in time, place, or sequence of events." *See Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 762, 501 N.W.2d 788 (1993). Johnson's injury occurred shortly after Balog instructed her to watch Kole. Although Johnson chased after Kole before injuring herself, the chase was a natural and near consequence of Balog instructing Johnson to watch Kole, and Balog's inability to intervene or help corral Kole.

¶57     Balog also argues that Johnson's injury is wholly out of proportion to Balog's alleged culpability because: (1) Marshfield Clinic was more negligent; (2) older children normally watch younger siblings; and (3) she could not have done anything more. Although Marshfield Clinic may or may not have been more negligent than Balog (a question for the jury to decide), Balog's negligence is not wholly out of proportion to her alleged culpability. Balog knew that Kole wanted to chase a bird, yet she instructed Johnson to watch Kole, and Balog then lost sight of the children for about ten minutes. Balog could have taken reasonable precautions to prevent Johnson's injury, such as telling Johnson and Kole to stay close to her and to play within Balog's sight, or to play inside the home. Because she lost sight of the children, Balog could not, and did not, assist Johnson in catching Kole, which may have prevented Johnson from going near the bollards. Finally, it may be normal for an older child to watch a younger sibling, but it is not unreasonable for those ultimately responsible for the children to take reasonable precautions to ensure the safety of those children, such as not allowing them to be outside near a public road while out of the sight of the person ultimately responsible for their wellbeing.

¶58     Balog next contends that Johnson's injury is highly extraordinary compared to Balog's alleged negligence because Johnson's injury was bizarre and because one would not expect a twelve-year-old to get hurt while watching a three-year-old. Even though Johnson's injury may have been bizarre in some sense, we cannot conclude that it was a highly extraordinary result of Balog instructing Johnson to watch Kole under the circumstances. In knowing that Kole wanted to chase after a bird, one could foresee that Johnson might need to chase after Kole and that she could be injured in the course of doing so, in any variety of manners.

¶59 Finally, Balog argues that allowing recovery would place an unreasonable burden on her—as well as other parents and grandparents—because it would preclude children from watching younger siblings and it would require Balog to impose unreasonable restrictions on her grandchildren. We cannot agree. As we have explained, Balog could have taken reasonable precautions to protect Johnson and Kole under the circumstances. Moreover, it is not unreasonable to expect Balog to watch the children closely while they were all outside because she was ultimately responsible for watching them that day. Balog may have reasonably believed that Johnson could watch over Kole, but that belief did not prevent her from taking reasonable steps to better ensure the safety of both children.[6]

¶60 On the whole, we cannot conclude, as a matter of law, that Balog had no duty to Johnson under the circumstances of this case. Rather, a fact finder could find Johnson's injury to be a foreseeable consequence of Balog instructing her to watch Kole in the yard, and of Balog losing sight of the children. A fact finder will ultimately determine whether Balog's actions were reasonable, and whether she breached her duty of ordinary care while supervising the children. We also cannot conclude, as a matter of law, that any of the public policy factors preclude holding Balog liable if she is found negligent. We therefore reverse the

---

[6] The circuit court seemed to suggest that allowing recovery against Balog would enter into a field that has no just stopping point. Balog does not raise any additional argument on this public policy factor on appeal, but she notes that her arguments on the fourth factor support the court's conclusion. We conclude that this factor does not apply to the present circumstances. Balog undertook the responsibility of watching Johnson and Kole outside of her house and near a public road, and she could have taken reasonable precautions. Allowing recovery against Balog would not enter a field with no just stopping point.

28

circuit court's grant of summary judgment in Balog's favor and remand for further proceedings consistent with this opinion.

¶61    No costs to either party.

*By the Court.*—Judgments affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.